Filed 12/9/21  P. v. Turcios CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>ROBERTO RENE TURCIOS,<br><br>    Defendant and Appellant. | A159079<br><br>(Contra Costa County<br>Super. Ct. No. 5-191194-0) |

Defendant Roberto Turcios had an altercation with his former romantic partner (Doe 1) and her 16-year-old daughter (Doe 2).  During the incident, he struck Doe 2 on the head with a baseball bat, causing her to bleed.  A jury convicted him of various offenses related to the altercation, including assault with a deadly weapon under Penal Code section 245, subdivision (a)(1), and another offense with an accompanying enhancement for personal use of a deadly or dangerous weapon under Penal Code section 12022, subdivision (b)(1).[1]  He was sentenced to three years in prison.

On appeal, Turcios's sole contention is that the trial court erred by instructing the jury in a manner that allowed it to conclude that the baseball

---

[1] We shall refer collectively to this assault conviction and enhancement as the "weapons conviction and enhancement."  All further statutory references are to the Penal Code.

1

bat was an inherently deadly weapon, requiring reversal of the weapons conviction and enhancement. We agree with the parties that the court's instructions were erroneous under *People v. Aledamat* (2019) 8 Cal.5th 1 (*Aledamat*), which was decided shortly before the case was submitted to the jury. We also conclude that the error was prejudicial, although not for any reason advanced by Turcios. Accordingly, we reverse the weapons conviction and enhancement and remand for further proceedings.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Turcios lived with Doe 1 and Doe 2 in their Pittsburg home for about 10 years before he and Doe 1 ended their relationship. Doe 1 obtained a restraining order against him a few months before the altercation, which occurred on July 1, 2018.

Doe 2 testified that on that day, she was in her bedroom with her boyfriend when she heard noises and saw her mother's bedroom door close. Doe 2 suspected that Turcios had entered the house and gone into her mother's bedroom, where Doe 1 was lying in bed recovering from a back injury. Doe 2 went to her mother's bedroom and saw Turcios lying on the bed next to Doe 1. Concerned, Doe 2 asked her mother if she was all right, but there was no response. Doe 2 left her mother's bedroom to call a friend for help, but she then heard Doe 1 scream her name.

According to Doe 1, Turcios, who appeared to be drunk, had entered her bedroom, lay down on the bed with her, and told her he loved her. He then "began to squeeze [her] neck" and told her he was going to kill her, at which point she yelled for Doe 2. In contrast to Doe 2, Doe 1 did not recall her daughter being in the room before Doe 1 yelled for help.

2

Doe 2 testified that after she heard her mother yell for help, she grabbed a wooden baseball bat, ran into her mother's bedroom, and yelled at Turcios to leave. Doe 2's boyfriend followed her and stood by the door. Turcios kicked Doe 2, and she dropped the bat without having swung it. Turcios picked up the bat and, while still on the bed, kicked Doe 2 a second time. He then hit Doe 2 in the back of the head with the bat. Doe 2 sat down on the bed, and Turcios hit her again with the bat, this time on her forehead. Doe 2 felt herself bleeding, started to scream, and left the bedroom.

Doe 1 testified that after Turcios hit her daughter, she "grabbed him by the shirt" and told Doe 2's boyfriend to call the police. Turcios stated, "You know what is going to happen if you call the police," which Doe 1 testified she interpreted as a threat because "[h]e always used to say that if we ever called the police, he was going to kill us." Turcios then hit her arm with the baseball bat, bruising it, before leaving the room. Doe 1 testified that she also injured her knee during the incident, although she was not sure whether Turcios hit her on the knee with the bat as well.

According to Doe 2's boyfriend, after Doe 2 left the bedroom Doe 1 "had [Turcios] in a choke hold," and the boyfriend got onto the bed and punched Turcios in the face. The boyfriend then rose to call the police, at which point Turcios "held the bat over . . . Doe 1's head" and said, "If you call the police, I'm going to kill her." The boyfriend testified that in an attempt to calm Turcios, he told the other man that he would not call the police and put down his phone.

Doe 2 and her boyfriend eventually went outside, and Turcios and Doe 1 exited the house shortly afterward. Doe 2's boyfriend said, referring to Doe 2, "She's bleeding," and Turcios responded, "I didn't hit her; I did not touch her." He then quickly drove away from the scene. Doe 2 was

3

eventually taken by ambulance to a hospital and received two stitches to the front of her head.

A year later, Turcios was charged by information with seven felonies and several accompanying enhancements. The offenses involving Doe 1 were infliction of corporal injury to an intimate partner, assault with a deadly weapon, criminal threats, and dissuading a witness by force or threat. The offenses involving Doe 2 were child abuse under conditions likely to produce great bodily injury, corporal injury to a child, and assault with a deadly weapon. Turcios was also charged with the misdemeanor of disobeying a domestic relations court order.[2]

The jury convicted Turcios of the counts of assault with a deadly weapon against Doe 2 and corporal injury to a child, including an enhancement accompanying the latter charge for personal use of a deadly or dangerous weapon under section 12022, subdivision (b)(1), but it found not true enhancements for causing great bodily injury that were alleged as to both crimes. The jury also convicted Turcios of the misdemeanor charge. He was acquitted of the remaining felonies, although the jury found him guilty of the lesser included misdemeanors against Doe 1 of battery of an intimate partner and simple assault, and the lesser included misdemeanor against

---

[2] The felony charges were brought under sections 273.5, subdivision (a) (corporal injury to intimate partner), 245, subdivision (a)(1) (both assault charges), 422 (criminal threats), 136.1 (witness dissuasion), 273a, subdivision (a) (child abuse), and 273d, subdivision (a) (corporal injury to child). The misdemeanor charge was brought under section 273.6, subdivision (a).

Doe 2 of child abuse under circumstances not likely to produce great bodily injury.[3]

The trial court denied probation and sentenced Turcios to the low term of two years for corporal injury to a child and a consecutive term of one year for the use of a deadly or dangerous weapon. The court also imposed concurrent terms of 364 days in jail each for the battery of Doe 1 and the violation of a domestic relations order and stayed terms for the remaining convictions under section 654. Thus, the total unstayed term was three years in prison.

## II.
### DISCUSSION

As we have said, Turcios's only contention on appeal is that the trial court prejudicially erred in instructing the jury, a claim we review de novo. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568.) Turcios maintains that as a result of the instructional error we must reverse the weapons conviction and enhancement. The Attorney General concedes that error occurred but argues that it was harmless. We conclude that reversal is required.

### 1.    Additional facts

Under section 245, subdivision (a)(l), "commit[ting] an assault upon the person of another with a deadly weapon or instrument other than a firearm" is a felony offense. The trial court instructed the jury under CALCRIM No. 875 on the elements of this crime. The instruction informed the jury that a conviction required the prosecution to prove beyond a reasonable doubt that Turcios acted with a deadly weapon. Jurors were instructed, consistent with

---

[3] The convictions for the lesser included offenses were under sections 243, subdivision (e)(1) (battery), 240 (simple assault), and 273a, subdivision (b) (child abuse).

governing law, that "[a] deadly weapon other than a firearm is any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury." (See *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028–1029; see also *In re B.M.* (2018) 6 Cal.5th 528, 530.)

A similar instruction was given regarding the enhancement for personal use of a deadly or dangerous weapon alleged in connection with the count of corporal injury to a child. Under section 12022, subdivision (b)(1), "personally us[ing] a deadly or dangerous weapon in the commission of a felony" is punishable by an additional year in custody. The jury was instructed under CALCRIM No. 3145 that the enhancement could be found true only if the prosecution proved beyond a reasonable doubt that Turcios personally used a deadly or dangerous weapon, which was defined as "any object, instrument, or weapon that is inherently deadly [or dangerous] or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury."[4] The instruction further directed the jury that "[i]n deciding whether an object is a deadly weapon," it was to "consider all the surrounding circumstances, including when and where the object was possessed[,] [and any other evidence that indicates whether the object would be used for a dangerous, rather than a harmless, purpose]." Neither of the instructions, however, defined the meaning of an "inherently" deadly or dangerous weapon.

---

[4] Although the weapons conviction and enhancement differ in that the former requires use of a "deadly weapon" and the latter requires use of a "deadly or dangerous weapon," the same principle applies that a weapon can qualify as such based on either its inherent nature or the way in which it is used. (*Aledamat*, *supra*, 8 Cal.5th at p. 6, fn. 2.)

2.    Discussion

Turcios argues that CALCRIM Nos. 875 and 3145 were legally erroneous because they each presented both an impermissible theory and a permissible theory for a finding against him. The impermissible theory allowed the jury to find him guilty by concluding that the baseball bat was an inherently deadly weapon as a matter of law. (See *Aledamat, supra,* 8 Cal.5th at pp. 6–7.) The permissible theory allowed the jury to find him guilty by concluding that the baseball bat was deadly because of the way he used it. (See *id.* at p. 7.) An instruction that provides both a valid and invalid theory for conviction is prejudicial unless it did not affect the verdict beyond a reasonable doubt. (*Id.* at pp. 9–11; see *Chapman v. California* (1967) 386 U.S. 18, 24.)

Our analysis relies on *Aledamat,* which also involved CALCRIM Nos. 875 and 3145.[5] (*Aledamat, supra,* 8 Cal.5th at pp. 4–5.) In *Aledamat,* the parties conceded that those instructions were erroneous because they permitted the jury to find that the weapon at issue, a box cutter, was either an inherently dangerous weapon or used in a way likely to cause great bodily injury or death. (*Id.* at pp. 4–6.) Because a box cutter is not an inherently dangerous weapon as a matter of law, the instructions thus presented an incorrect and a correct theory by which the jury could find that the implement was a deadly weapon. (*Id.* at pp. 6–7.)

The Attorney General concedes that a baseball bat is not an inherently dangerous weapon because it "can be, and usually is, used for innocent purposes." (*Aledamat, supra,* 8 Cal.5th at p. 6; *People v. King* (2006) 38 Cal.4th 617, 624.) Thus, just as it was error for the trial court to give

_____

[5] *Aledamat* was issued on August 26, 2019. The instructions here were read to the jury on October 1, 2019.

7

instructions in *Aledamat* that allowed the jury to decide that a box cutter was an inherently deadly weapon, it was error for the trial court to give instructions here that allowed the jury to decide that the baseball bat was an inherently deadly weapon.

*Aledamat* then turned to the issue of which standard for assessing prejudice applies. (*Aledamat, supra,* 8 Cal.5th at p. 9.) The Supreme Court first explained that the theory for finding that the box cutter was a deadly weapon because it was inherently dangerous was not merely unsupported by the evidence but "legally erroneous—i.e., of a kind the jury is *not* equipped to detect." (*Id.* at pp. 7–8.) This was so because CALCRIM Nos. 875 and 3145 "did not define what 'inherently deadly' meant, [and] the jury would not be equipped to know that, contrary to what the instruction suggested, a box cutter is *not* an inherently deadly weapon" as a matter of law. (*Aledamat,* at p. 8.) The Court held that when a trial court gives instructions that provide both a valid and a legally erroneous theory to convict, "[t]he reviewing court must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt" under the *Chapman* standard for federal constitutional error. (*Id.* at p. 3.)

We conclude that the instructional error requires reversal under this standard, albeit for a reason that neither party addresses: the jury's verdict on the child-abuse count. Turcios was charged under section 273a, subdivision (a), which authorizes imprisonment of "[a]ny person who, *under circumstances or conditions likely to produce great bodily harm or death,* willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or

willfully causes or permits that child to be placed in a situation where [the child's] person or health is endangered." (Italics added.) The jury acquitted Turcios of that crime, instead convicting him of the lesser included offense under subdivision (b) of the same statute, which makes it a misdemeanor to engage in the identical four types of conduct when done "under circumstances or conditions *other than* those likely to produce great bodily harm or death." (Italics added.)

The only difference between the greater offense under section 273a, subdivision (a), and lesser included offense under section 273a, subdivision (b), is whether the prohibited conduct " 'was under circumstances or conditions likely to produce great bodily harm or death,' i.e., under conditions 'in which the probability of serious injury is great.' " (*People v. Sargent* (1999) 19 Cal.4th 1206, 1223.) Indeed, the jury was instructed that "the difference between Count Four [the charge under section 273a, subdivision (a)] and the lesser is that Count Four requires circumstance[s] likely to produce great bodily harm or death, whereas the lesser[]included [offense] does not have that requirement, only that it be unjustifiable physical pain or mental suffering." Thus, by returning a verdict on the lesser included offense, the jury necessarily found that Turcios did not inflict abuse on Doe 2 under circumstances or conditions likely to produce great bodily injury.

In light of this finding, we cannot rule out the possibility that the jury relied on the impermissible theory for convicting Turcios of the weapons charge and enhancement, i.e., that the baseball bat was an inherently dangerous weapon as a matter of law. The jury was instructed under the permissible theory that it could find the baseball bat was a deadly weapon if it was "used in such a way that it is capable of causing and likely to cause

death or great bodily injury." But the only identified act to support the child-abuse charge was the hitting of Doe 2 with the baseball bat, which was also the basis for the other charges involving Doe 2. Since the jury concluded that the child abuse was committed under circumstances that were *not* likely to produce great bodily injury, it is difficult to see how it could have also concluded that the baseball bat *was* used in a way likely to cause great bodily injury, as required under the permissible theory to support the weapons conviction and enhancement.[6] Even if such findings could be reconciled with each other under some theoretical version of the facts, the jury's rejection of the conclusion that Turcios abused Doe 2 under circumstances or conditions likely to produce great bodily harm or death creates a reasonable possibility that the weapons conviction and enhancement were based, not on the permissible theory that the baseball bat was used in a deadly manner, but instead on the impermissible theory that the baseball bat was inherently dangerous.

In arguing that the instructional error was harmless, the Attorney General overlooks the jury's verdict on the child-abuse charge and focuses on the facts that Turcios was acquitted of the charge of assault with a deadly weapon against Doe 1 and found guilty only of the lesser included offense of simple assault under section 240. The only difference between the two

---

[6] The converse would not necessarily be true, had Turcios been convicted of felony child abuse but acquitted of assault with a deadly weapon. For example, in *People v. Clark* (2011) 201 Cal.App.4th 235, the Court of Appeal concluded that there was "nothing inconsistent" about the fact the defendant was acquitted of an assault count requiring the use of force likely to cause great bodily injury yet convicted of felony child abuse. (*Id.* at p. 252.) As the decision explained, the use of force is but one circumstance or condition to be evaluated in determining whether injury was willfully inflicted on a child under circumstances "likely to produce great bodily harm or death" under section 273a, subdivision (a). (*Clark*, at p. 243.)

10

offenses is whether the assault was committed with a deadly weapon. (See §§ 240, 245, subd. (a)(1).) Thus, according to the Attorney General, because the prosecutor argued that Turcios was guilty of assault with a deadly weapon based on his hitting Doe 1 with the baseball bat, the jury must have concluded that the baseball bat was not a deadly weapon in order to return a verdict of simple assault. In turn, says the Attorney General, the jury must have concluded that the baseball bat was not an inherently deadly weapon, meaning the weapons conviction and enhancement were *not* based on the impermissible theory but instead on the permissible theory of how the bat was used against Doe 2.

This argument is unpersuasive because conduct other than hitting Doe 1 with the baseball bat could have supported the verdict of simple assault. Specifically, evidence was presented that Turcios choked Doe 1. Thus, the jury could have found that Turcios never hit Doe 1 with the baseball bat but still committed assault by choking her.[7] We are not persuaded otherwise just because the prosecutor argued that hitting Doe 1 with the baseball bat was the basis of the assault charge. Of course, the jury needed to conclude that Turcios hit Doe 1 with the baseball bat if it was going to find him guilty of assault with a deadly weapon on her. But the prosecutor's omission of an argument about how the jury might reach a conviction on the lesser included offense of simple assault would not have necessarily conveyed that the act of hitting Doe 1 with the baseball bat was the only possible basis for *any* assault conviction.[8]

---

[7] Although we do not detail it, there was significant evidence calling into question the credibility of both Doe 1 and Doe 2's boyfriend, a possible explanation for the jury's verdicts on the counts involving Doe 1.

[8] Indeed, although the prosecutor argued that the hitting of Doe 1 with the baseball bat also supported the charge of corporal injury to an intimate

11

We acknowledge that the prosecutor never argued that the jury could convict Turcios on the weapons charge or enhancement if it found the baseball bat was an inherently deadly weapon. To the contrary, the prosecutor urged the jury to conclude that the baseball bat was a deadly weapon based on the manner in which Turcios used it. Absent the verdict on the child-abuse charge, we might agree that this circumstance, in combination with the evidence and arguments as a whole, "leave[s] no reasonable doubt that the jury made the [necessary] findings." (*Aledamat*, *supra*, 8 Cal.5th at p. 10.) But because the jury found that Turcios assaulted Doe 2 with the baseball bat yet also found that he committed child abuse under circumstances not likely to produce great bodily harm, we cannot conclude beyond a reasonable doubt that the jury found the baseball bat was used in a way likely to cause great bodily injury.

Finally, we consider the proper disposition. Turcios argues that the weapons conviction should be reversed and the weapons enhancement should be vacated. The Attorney General does not address the issue. We disagree that a full reversal of the conviction is warranted, as the error affects only the element of use of a deadly weapon and there can be no dispute that the evidence supports the lesser included offense of simple assault. (See *People v. Edwards* (1985) 39 Cal.3d 107, 118; *People v. Moretto* (1994) 21 Cal.App.4th 1269, 1278; see also § 1260.) Accordingly, we reverse the weapons conviction, vacate the weapons enhancement, and remand with directions that if the

---

partner, he told the jury to find true the weapons enhancement for that charge "[*i*]*f* you believe he used a bat when he did that." (Italics added.) This suggested that some conduct other than hitting Doe 1 with the bat could also support a conviction of corporal injury to an intimate partner and, in turn, the lesser included offense of misdemeanor battery of an intimate partner of which Turcios was ultimately convicted.

People do not elect to retry Turcios for assault with a deadly weapon and the enhancement for personal use of a deadly or dangerous weapon attached to the conviction of corporal injury to a child, the judgment shall be modified to reflect a conviction of simple assault under section 240.

## III.
### DISPOSITION

The conviction for assault with a deadly weapon (count 6) is reversed, and the enhancement for personal use of a deadly or dangerous weapon (count 5) is vacated. If the People do not elect to retry Turcios for this crime and enhancement, the judgment shall be modified to reflect his conviction on count 6 for simple assault under Penal Code section 240 and to strike the enhancement on count 5. In either case, Turcios shall receive a new sentencing hearing. In all other respects, the judgment is affirmed.

13

_____

Humes, P.J.


WE CONCUR:


_____

Banke, J.


_____

Sanchez, J.


*People v. Turcios*  A159079